**In re William Douglas PAEPLOW, Debtor.**

**William D. PAEPLOW, Plaintiff,**

v.

**Edmond W. FOLEY, R. Kent Rowe, R. Kent Rowe, III, Jerry E. Huelat, V.L. Beagles, Betty Beagles, Pete Cassen, and Karen Cassen, Defendants.**

**Bankruptcy No. 82–30928–RKR.**
**Adv. No. 90–3085.**

United States Bankruptcy Court,
N.D. Indiana,
South Bend Division.

Sept. 24, 1990.

Henry A. Hoover, South Bend, Ind., for plaintiff.

Edmond W. Foley, South Bend, Ind., for defendants.

## AMENDED ORDER

ROBERT K. RODIBAUGH, Senior Bankruptcy Judge.

On July 25, 1990, William Douglas Paeplow, the debtor herein, filed his Verified Complaint for Injunction under 11 U.S.C. Section 524 against Edmond W. Foley, R. Kent Rowe, R. Kent Rowe III, Jerry E. Huelat, V.L. Beagles, Betty Beagles, Pete Cassen, and Karen Cassen. The defendants filed their Verified Motion to Strike and Request for Expedited Hearing on August 14, 1990, to which the debtor responded on August 27, 1990. The court held a hearing on the defendants' motion on August 28, 1990, and took the matter under advisement on September 7, 1990, after giving the parties the opportunity to file briefs.

At the pre-trial conference on the debtor's complaint on September 12, 1990, the parties advised the court that they have no further evidence to submit concerning the complaint unless the court grants attorney's fees to either party as a form of sanction, in which case the parties will need to present additional evidence to establish the necessary amount of the fees. Defendants' motion and the debtor's complaint thus are ripe for decision.

### Background

William Douglas Paeplow filed his petition under Chapter 7 of the Bankruptcy Code on September 3, 1982. In his complaint the debtor alleges that on October 17, 1988, the defendants filed an Amended Complaint in the St. Joseph Superior Court, St. Joseph County, Indiana, to collect an obligation which has been discharged. The debtor indicates that he listed the obligation in his bankruptcy schedules and that this court discharged the same along with the debtor's other debts on January 6, 1984. The defendants' Amended Complaint is captioned *V.L. Beagles, et al., v. Janis A. Paeplow* in Cause No. R–4348 in the St. Joseph Superior Court. According to the debtor, defendants Edmond W. Foley, R. Kent Rowe, R. Kent Rowe III, and Jerry E. Huelat, who are attorneys, filed the Amended Complaint on behalf of defendants V.L. Beagles, Betty Beagles, Pete Cassen, and Karen Cassen, who are creditors of the debtor. The debtor contends that the defendants filed the complaint although they were aware that the debtor's obligation to them had been discharged in the debtor's Chapter 7 case. The debtor notes that the state court complaint concerns certain residential property which the debtor and his wife, Janice A. Paeplow, own as tenants by the entirety, subject to a purchase money mortgage lien. The debtor submits that he and Mrs. Paeplow have paid each mortgage installment payment due and payable on the property thereby increasing their equity in the real estate. Inasmuch as the trial on the defendants' complaint is scheduled for September 26, 1990, the debtor requests an injunction. The debtor asserts that he has no adequate remedy at law and that unless the court grants the relief which he has requested, he will suffer irreparable harm. The debtor also requests a monetary judgment against defendants along with attorney's fees and expenses, punitive damages, and sanctions.

In their Verified Motion to Strike and Request for Expedited Hearing the defendants ask the court to strike the debtor's complaint for injunction pursuant to Federal Rule of Civil Procedure 11. They allege that the debtor's complaint is not grounded in fact or law and that the debtor has filed his complaint in order to delay and harass them. The defendants request the court to

sanction the debtor and at least to require him to reimburse them for their reasonable expenses in this matter. In support of their motion the defendants allege the following pertinent facts:

1. That on the 5th day of October, 1981, the plaintiff, William Paeplow, together with his wife, Janet, executed a joint note payable to the First Interstate Bank at its offices in Roswell, New Mexico, in the sum of Sixty Thousand ($60,-000.00) Dollars to be paid in full on or before April 5, 1982.

2. That on or about the aforesaid date, the defendants, V.L. Beagles, Betty Beagles, Pete Cassen and Karen Cassen executed an agreement subordinating their rights to certain inventory and other property owned by the plaintiff, to the rights of the First Interstate Bank of Roswell, New Mexico arising out of the aforesaid note.

3. That Mr. and Mrs. Paeplow defaulted on said note and Mr. Paeplow filed a petition in bankruptcy on September 3, 1982. In order to protect their interests in the property they had subordinated to First Interstate Bank, the Beagles and the Cassens assumed liability on said note.

4. That on December 12, 1983, a motion for relief from automatic stay, was filed by First Interstate Bank of Roswell seeking permission for leave to file an action in state court against Mr. Paeplow solely for the purpose of obtaining a joint judgment against William Paeplow and his wife so that execution might obtain against certain real estate owned by Mr. and Mrs. Paeplow as tenants by the entireties....

5. That on January 16, 1984, this court granted First Interstate Bank the right to proceed *in rem* on its joint claim against Mr. and Mrs. Paeplow in State Court, and to enforce any subsequent Judgment lien against the aforesaid real estate....

7. That First Interstate Bank assigned its rights in and to said note to V.L. Beagles, Betty Beagles, Pete Cassen, and Karen Cassen, all of whom have now stepped into the shoes of First Interstate Bank, and are in a position to seek a joint judgment lien on the aforesaid entireties property.[1]

8. That on September 28, 1987, the Beagles and the Cassens filed their own motion for relief from stay for purposes of proceeding in State Court against William Paeplow in order to obtain a joint judgment with regard to the aforesaid note: Mr. Paeplow never objected to this motion for relief from automatic stay.

9. That on September 30, 1987, this court entered an order noting that a discharge had been issued as to Mr. Paeplow on January 6, 1984, at which time the stay was lifted as to all creditors.

10. That on October 19, 1988, a Motion for Leave to File an Amended Complaint was filed in the state court action pending against Mrs. Paeplow on the aforesaid note, requesting leave to add William Paeplow as a named defendant in order to proceed against the real property held by Janice and William Paeplow as tenants by the entireties; and on October 21, 1988, Judge Brook of the St. Joseph Superior Court granted the motion and allowed William Paeplow to be joined as an additional party defendant. Neither Mr. Paeplow or [sic] his counsel ever objected to this request.

11. That on October 31, 1988, defendants, Beagles and Cassens filed their amended complaint adding William Paeplow as a named defendant without objection by either Mr. or Mrs. Paeplow; and that matter is now being pursued in the St. Joseph Superior Court, Cause No: R–4348....

12. That on November 28, 1988, William Douglas Paeplow answered the complaint in the aforesaid proceeding in state court and never pled discharge in bankruptcy as an affirmative defense in that matter even though he would have been required to do so by .T.R. 8 of the Indiana Rules of Trial Procedure.

13. That the Beagles and Cassens filed a motion for summary judgment in

---

**1.** The defendants' motion contains no paragraph 6.

the above action and the matter was briefed and argued by both parties (Judge Brook of the St. Joseph superior Court currently has said motion under advisement); and at no time in briefing or arguing that motion did plaintiff or his attorney ever object to Judge Brook exercising jurisdiction over this claim; nor did they ever argue or plead that Mr. Paeplow's obligations were discharged in bankruptcy.

14. That it has been almost two (2) years since plaintiff filed his answer to the amended complaint naming him as a party in the state court action and not once was the trial court in that matter, even up to the present time, ever asked to consider the effect of Mr. Paeplow's discharge on the pending state court action.

15. That during this entire time, plaintiff made no request of this Honorable Court with regard to this issue, but rather plaintiff and his counsel permitted an amended complaint to be filed, without objection, against Mr. Paeplow; permitted that matter to proceed through summary judgment without any suggestion that the action was improper; and permitted the case to be set for trial without ever asking this court to intervene....

Defendants' motion at 1–5 (August 14, 1990).

The defendants argue that by his conduct the debtor has waived any objection he may have to the continuance of the proceeding in the St. Joseph Superior Court. In addition, the defendants argue that applicable law permits them to proceed in the state court despite the debtor's discharge because they "are not seeking an order of personal liability against the [debtor], but are merely attempting to obtain a joint judgment against Mr. and Mrs. Paeplow so that execution against the aforementioned entireties property can be made." Defendants' motion at 5 (citing this court's decision in *In re Jeffers*, 3 B.R. 49, 52–53 (Bank.N.D.Ind.1980)). The defen-

dants contend that the debtor has set forth insufficient facts to support his claim for bad faith and punitive damages against them. As the trial in the state court is set for September 26, 1990, the defendants assert that the debtor merely attempts in bad faith to delay the state court trial by filing his complaint for injunction in this court.

In his response to the defendants' motion filed on August 27, 1990, the debtor submits that he has set forth a substantive basis for obtaining an injunction against the defendants. Initially, he points out that 11 U.S.C. § 727 operates to discharge a debtor from all pre-petition obligations except those debts excepted from discharge under § 523. Moreover, based upon this court's unpublished opinion in *Gilbert v. Indiana Bank and Trust Co. of Fort Wayne (In re Gilbert)*, Bankr. No. FB 76–513, (Bankr.N.D.Ind. September 30, 1977), the debtor submits that this court already has determined that a creditor may not proceed against property held by the debtor and his spouse as tenants by the entirety to collect a debt which was not secured by a lien on the property prior to the debtor's discharge because the underlying indebtedness (of the debtor) was discharged in bankruptcy.[2] The debtor also cites *Harris v. Manufacturers Nat. Bank of Detroit*, 457 F.2d 631 (6th Cir.1972), *cert. denied*, 409 U.S. 885, 93 S.Ct. 118, 34 L.Ed.2d 142 (1972), and other cases in support of his argument. The debtor argues that these cases do not leave creditors without remedy when only one spouse files a petition in bankruptcy and the creditor has not yet obtained a judgment or lien on the husband and wife's tenants by the entirety property. In such a case the creditor may request a stay of the debtor's discharge in order to obtain a judgment and perfect its lien. The debtor indicates that although the defendants' assignor, First Interstate Bank, requested relief from the stay in this case, it and/or the defendants failed to obtain a stay of the debtor's discharge.

---

**2.** The district court affirmed this court's unpublished decision in *Gilbert* on June 9, 1978. *Indiana Bank and Trust Co. of Fort Wayne v.*

*Gilbert (In re Gilbert)*, No. FB 76–513 (N.D.Ind. June 9, 1978). Both unpublished decisions are attached to this Order.

The debtor further argues that the defendants are precluded by *res judicata* from claiming monetary damages against the debtor in state court because on September 21, 1984, the court dismissed with prejudice the adversary proceeding which First Interstate Bank filed against the debtor to collect the indebtedness arising from the Paeplows' promissory note to First Interstate Bank. As a dismissal with prejudice operates to bar a subsequent proceeding seeking the same relief, the debtor asserts that defendants V.L. Beagles, Betty Beagles, Pete Cassen, and Karen Cassen, as assignees of First Interstate Bank, are barred from seeking monetary relief from him in the state court. Based upon § 524(a) of the Bankruptcy Code, the debtor submits that his request for sanctions and damages against the defendants is appropriate.

In their reply to the debtor's response the defendants submit that their sole intent is to obtain a joint judgment against the Paeplows so that they may execute against the property which the Paeplows hold as tenants by the entirety. The defendants state that they do not seek a personal judgment against the debtor concerning his several liability on the promissory note. The defendants note that pursuant to Indiana law a creditor may not proceed against property held jointly by a husband and wife unless the creditor holds a joint judgment against the husband and wife. Because Mrs. Paeplow did not file a bankruptcy petition along with her husband, the defendants submit that they are unable to reach the Paeplows' jointly held real estate unless they are permitted to proceed to obtain a joint judgment against the Paeplows.

The defendants suggest that if they are not able to pursue a joint judgment against the Paeplows, the Paeplows will have immunized a substantial asset from their creditors through manipulation of the bankruptcy process. In support of their position the defendants cite *Echelbarger v. First National Bank of Swayzee, Ind.*, 211 Ind. 199, 5 N.E.2d 966 (1937), *First National Bank of Goodland v. Pothuisje*, 217 Ind. 1, 25 N.E.2d 436 (1940), and *Smith v.*

*Beneficial Finance Co. of Indianapolis, Inc.*, 139 Ind.App. 653, 218 N.E.2d 921 (1966), arguing that the while a husband and wife's bankruptcy may wipe out their personal or several liabilities stemming from a joint obligation, the bankruptcy does not affect their joint creditor's right to pursue property held by them as tenants by the entirety in order to satisfy their remaining joint liability.

The defendants point out that First Interstate Bank specifically requested relief from the automatic stay for the purpose of obtaining a judgment against the property which the Paeplows held as tenants by the entirety. On January 16, 1984, the court granted First Interstate Bank's motion permitting First Interstate Bank to proceed to obtain a judgment in state court against the Paeplows. Three weeks later, the debtor was discharged. The defendants argue that the court could not have meant to require First Interstate Bank to obtain its judgment within three weeks or lose its right to proceed against the Paeplows' tenants by the entirety property. As First Interstate Bank clearly had established its "claim" against the Paeplows' property, the defendants submit that it had established an equitable or common law lien as to the property. Defendants' reply at 11 (September 5, 1990) (citing *Hubble v. Berry*, 180 Ind. 513, 103 N.E. 328 (1913), *First Bank v. Samocki Bros. Trucking Co.*, 509 N.E.2d 187 (Ind.App.1987), and *Radiotelephone Co. of Indiana v. Ford*, 531 N.E.2d 238 (Ind.App.1988)).

The defendants distinguish the court's decision in *Gilbert* due to the fact that the creditor in *Gilbert* had not asked for and received relief from the automatic stay to pursue its joint claim against the debtor and tenants by the entirety property as First Interstate Bank did in this case. The defendants further submit that contrary to the circumstances in *Gilbert*, the debtor in this case failed to assert his bankruptcy as a defense in the state court action as Indiana Trial Rule 8 requires. The defendants accordingly insist that the debtor has waived his defense and any right to invoke the jurisdiction and protection of this court.

Defendants' reply at 12 (citing *Rouhib v. The Michigan Bank*, 345 F.2d 782, 783 (6th Cir.1965)).

Finally, the defendants refute the debtor's argument that they are barred by *res judicata* from asserting their claims against the debtor. The defendants submit that although the complaint which First Interstate Bank filed against the debtor in this court was dismissed with prejudice, the dismissal does not operate as a bar to their state court action because the complaint concerned only the debtor's personal liability on the promissory note and not his joint obligation with his wife. As they seek only a judgment with respect to the joint obligation of the Paeplows on the promissory note, the defendants allege that the doctrine of *res judicata* does not apply.

### Discussion and Decision

This Order shall represent findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, made applicable in this proceeding by Bankruptcy Rules 7052 and 9014. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) over which the court has jurisdiction pursuant to 28 U.S.C. § 157(b)(1). Initially, the court must consider whether to strike or dismiss the debtor's complaint. Other issues before the court are whether the debtor's discharge operates as an injunction of the defendants' actions to recover a judgment concerning the liability of the debtor and his wife against property which they hold as tenants by the entirety and, if so, whether the debtor has waived his right to assert the injunction in the state court proceeding. In the alternative, if the debtor's discharge does not enjoin the defendants from proceeding in state court, the parties raise the issue of whether the state litigation is barred by *res judicata* due to previous litigation in this court. Finally, the court must determine whether the award of at-

torney's fees, expenses, and/or sanctions to any party is appropriate.

1. *The debtor's complaint was filed in good faith and contains valid legal arguments so as to withstand defendants' motion to strike*

■ The court declines to strike the debtor's complaint finding that the debtor has filed the complaint in good faith and not merely for purposes of delay or harassment. Although the debtor waited some time after the filing of the state court complaint to file his complaint for injunction in this court, his counsel indicated that he informed attorneys for the defendants at various times that he would file a complaint in this court to protect the debtor's interests if necessary. The court further finds that the complaint is grounded in fact and contains valid legal arguments which merit this court's consideration. The court accordingly proceeds to address the merits of the parties' arguments presented at the hearing on this matter and in their briefs filed with the court.

2. *The debtor's discharge operates as an injunction against the defendants' actions*

■ The primary case upon which the debtor relies in arguing that his discharge enjoins the defendants from taking any further action to collect his joint obligation stemming from the promissory note is *Gilbert v. Indiana Bank and Trust Co. of Fort Wayne (In re Gilbert)*, Bankr. No. FB 76–513, (Bankr.N.D.Ind. September 30, 1977).[3] The debtor also relies upon the unpublished decision of the district court which affirmed this court's order, *Indiana Bank and Trust Co. of Fort Wayne v. Gilbert (In re Gilbert)*, No. FB 76–513 (N.D.Ind. June 9, 1978). Northern District of Indiana Local Rule No. B–138 makes applicable herein Northern District of Indiana General Rule No. 38 concerning

---

**3.** The court is amused by the fact that when asked how he was able to locate this unpublished opinion of the court, counsel for the debtor admitted that his secretary found the opinion while rummaging through papers dis-

carded when an attorney moved from the building in which his law office is located. The court notes that opinions usually were not published prior to 1980.

citation to unpublished legal authorities. General Rule No. 38 provides:

> If a party relies upon a legal decision not published in the Federal Supplement, Federal Rules Decision, Federal Reporter, Federal Reporter 2d, Supreme Court Reporter, Bankruptcy Reporter, Northeast Reporter or Northeast Reporter 2d, then the party shall furnish the court with a copy of the relied-upon decision.

N.D.Ind. General Rule No. 38 (1987). Inasmuch as counsel for the debtor indicated at the hearing on this matter that he not only supplied the court with a copy of the *Gilbert* decision, but also supplied opposing counsel with a copy, the court finds that he has complied with the rules in relying upon this unpublished order of the court.

In *Gilbert* the debtor had filed a complaint to determine the dischargeability of his joint and several obligation on a promissory note executed with his wife and secured by a mortgage against a single parcel of property. The debtor also sought to enjoin his creditor from taking any action to collect the debt. The debtor had listed the obligation on his schedule of debts and had received his discharge in bankruptcy prior to the time his creditor received a judgment on the note against the debtor *in rem* and against his wife *in rem* and *in personam*. The debtor's primary argument was that although the creditor had the right to sell the real estate securing the promissory note in order to satisfy the debt, the creditor had no right to pursue other property which the debtor and his wife held as tenants by the entirety to collect any deficiency. The court granted summary judgment in favor of the debtor finding "that the bankrupt has a right to a fresh start and, therefore, it is inappropriate that a joint creditor can, subsequent to bankrupt's discharge, maintain a 'low profile' while the bankrupt and his wife build an equity in real estate that is tenancy by the entireties property." *Gilbert*, Bankr. No. FB 76–513, at 2–3 (citing another unpublished decision of the court, *In re Zilm*, Bankr. No. SB 75–61 (N.D.Ind. September 29, 1975)). The court concluded that "[t]his policy analysis requires that a joint creditor must either perfect its pre-discharge lien or suffer being discharged along with all other unsecured creditors." *Id.* The court also determined that a creditor in this situation would not be left without a remedy, but that the court would allow the creditor a sufficient stay to attempt to obtain a joint judgment and to perfect it prior to entry of the debtor's discharge. The court enjoined the debtor's creditor from any further proceedings against property which the debtor and his wife held as tenants by the entirety and against which the creditor had not secured a pre-discharge lien finding that "any residual balance of unpaid indebtedness still due on plaintiff's several and joint obligation to defendant reflects an indebtedness that is and has already been discharged in bankruptcy." *Id.* at 3.

On appeal the district court described the issue in *Gilbert* as follows:

> Does the discharge in bankruptcy of a person serve to bar a creditor from obtaining and satisfying a post-discharge in rem judgment against the bankrupt and his spouse, as husband and wife, as to a joint obligation of the bankrupt and spouse where satisfaction of the judgment is sought only from property held by them as tenants by the entirety at the time of the discharge and where no interest in that property passed to the trustee in bankruptcy or otherwise became subject to the jurisdiction of the bankruptcy court.

*Gilbert*, No. FB 76–513, at 2–3. The district court indicated that the bankruptcy court had answered the question in the affirmative and affirmed the order. *Id.* at 3. In its decision the district court observed that under Indiana law:

> three distinct forms of liability attach when a husband and wife incur a debt joint and severally: the husband becomes liable personally both jointly and severally; the wife becomes liable personally both jointly and severally; and the marital entity, *i.e.*, the husband and wife as such, becomes liable in rem to the extent of any real property held by the husband and wife as a marital entity, *i.e.*, as tenants by the entirety.

*Id.* at 5–6. The district court rejected the creditor's argument that the debtor and his wife's execution of a joint promissory note created an "automatic" lien in favor of their joint creditor on property which they held as tenants by the entirety. *Id.* at 6.

Most important for purposes of this case, the district court affirmed this court's holding that post-petition execution as to the debtor's tenancy by the entirety property is barred. *Gilbert,* No. FB 76–513, at 7–13. The district court adopted the reasoning and result of the United States Court of Appeals for the Sixth Circuit in *Harris v. Manufacturer's Nat'l Bank of Detroit,* 457 F.2d 631 (6th Cir.1972), *cert. denied,* 409 U.S. 885, 93 S.Ct. 118, 34 L.Ed.2d 142 (1972), in affirming the bankruptcy court's order. In the *Harris* case (1) the debtor and his wife obtained a loan for which they jointly executed a unsecured promissory note, (2) they defaulted on the note, (3) the husband filed a voluntary petition, (4) the creditor filed suit in state court seeking judgment on the joint debt, (5) the bankruptcy court entered the debtor's discharge, and (6) the debtor filed an action in federal court to enjoin the creditor from proceeding in state court.[4] On these facts the Sixth Circuit reversed the decision of the district court permitting post-discharge execution as to tenants by the entirety property. Specifically, the Sixth Circuit found that the Michigan rule allowing execution as to the debtor's joint liability on property which he and his wife owned as tenants by the entirety conflicted with the provisions of the Bankruptcy Act[5] which grant the debtor a "fresh start." *Gilbert,* No. FB 76–513, at 11–12 (quoting *Harris,* 457 F.2d at 635). The court concluded that "the discharged husband's interest in the property ... cannot be isolated and removed from a joint judgment against both spouses." *Id.* at 12 (quoting *Harris,* 457 F.2d at 635 n. 1).

In *Gilbert,* the district court noted that the Michigan law which the *Harris* court rejected as conflicting with provisions of the Bankruptcy Act was somewhat different from Indiana law in that Indiana law "limit[ed] the 'third' liability recovery to the interest in tenancy by the entirety property held by the bankrupt and spouse at the time of the discharge." *Gilbert,* No. FB 76–513, at 10 n. 10. The district court determined, however, that the limitation on recovery was insufficient to distinguish the Indiana law. *Id.* The court observed that the *Harris* decision did not leave creditors without a remedy:

> It is a well established practice for such creditors to petition the bankruptcy court for, and to receive, a stay of discharge pending their obtaining a valid state court judgment which creates a pre-discharge lien on the tenancy by the entirety property. Since this property does not pass to the bankruptcy estate, the lien cannot be invalidated by the bankruptcy estate, and thus, it preserves the creditor's claim as against the tenancy by the entirety property. *See, e.g., Davison v. Virginia National Bank,* 493 F.2d 1220 (4th Cir.1974); *Phillips v. Krakower,* 46 F.2d 764 (4th Cir.1931); *In re Magee,* 415 F.Supp. 521 (W.D.Mo.1976).

*Gilbert,* No. FB 76–513, at 12–13 n. 5.

Reviewing these decisions as well as those which the defendants cited in their briefs, the court concludes that the rationale and results of the *Harris* and *Gilbert* cases should apply to the facts of this case. Although the United States Court of Appeals for the Seventh Circuit apparently has not ruled directly on this question, the court cited *Harris* approvingly in *In re Brandstaetter,* 767 F.2d 324, 328 (7th Cir. 1985), stating that "post-discharge efforts

---

4. One important difference in the case at hand is that the defendants V.L. Beagles, Betty Beagles, Pete Cassen, and Karen Cassen are not parties to the promissory note which the debtor and his wife executed. They are assignees of the original creditor, First Interstate Bank. Another factual variation in this case is that First Interstate Bank requested relief from the automatic stay to pursue its state court judgment prior to the debtor's discharge. First Interstate Bank itself apparently never proceeded to collect a judgment against the debtor but assigned its interest to the above-named defendants.

5. *Harris* involved section 17 of the former Bankruptcy Act.

to reach purportedly exempt property must fail."[6]

The court regrets that its Order on Motion for Relief from Automatic Stay[7] may have misled defendants V.L. Beagles, Betty Beagles, Pete Cassen, and Karen Cassen into believing that they had the right to pursue the tenancy by the entirety property of the debtor and his wife. The order stated in relevant part:

That the automatic stay of 11 U.S.C. § 362(a) as against Bank shall be and hereby is modified to enable it to proceed in state court on its joint claim against Debtor and Debtor's wife and to enforce any subsequent judgment lien thereby obtained against the real estate located at 51921 Whitestable Lane, South Bend, Indiana held by the Debtor and his wife as tenancy by the entireties property.

Order on Motion for Relief From Automatic Stay at 1 (January 16, 1984). Having received relief from the automatic stay to pursue its judgment lien against the property which the debtor and his wife held as tenants by the entirety, First Interstate Bank failed to take the second necessary step to preserve its claim to the tenancy by the entirety real estate. First Interstate Bank failed to move for a stay of the debtor's discharge while obtaining its judgment lien. As a practical matter, the court believes that First Interstate Bank simply may have lost interest in its claim and therefore failed to take the remaining steps to save its claim. The record shows that First Interstate Bank assigned its interest in the promissory note executed by the debtor and his wife to defendants V.L. Beagles, Betty Beagles, Pete Cassen, and Karen Cassen.

■ As the debtor listed his indebtedness to First Interstate Bank in his bankruptcy schedules and was granted a discharge before any party obtained a judgment lien on the property which he and his wife held as tenants by the entirety, the court finds that the debtor's joint and several liability arising from the promissory note executed in favor of First Interstate Bank has been discharged. First Interstate Bank and/or its assignees further have been enjoined from the date of the discharge from taking any further action to collect the debtor's portion of the liability. 11 U.S.C. § 524(a)(2) (Callaghan 1989). They, of course, are free to attempt to collect the debtor's spouse's portion of the liability but may not obtain a lien against property which the debtor and his wife held as tenants by the entirety at the time of the debtor's discharge because they failed to preserve their claim to the property prior to the discharge. The court finds this to be so notwithstanding the debtor's action or inaction in the subsequent state court proceeding.

3. *The award of attorney's fees, expenses, damages or sanctions against either party is inappropriate*

■ As the law in this jurisdiction concerning the issues at hand was not published but was established in unpublished decisions of this court and the district court prior to 1980, and as the defendants proceeded with their actions in good faith believing that they were entitled to pursue a judgment concerning the debtor's several liability under the joint promissory note executed in favor of First Interstate Bank, the court finds that the award of attorney's fees, expenses, damages or sanctions to either party is inappropriate. The court accordingly declines to grant the same to either party.

*Conclusion*

WHEREFORE, the court now denies the defendants' motion to strike and grants the debtor's complaint for injunction. The parties' requests for sanctions and/or attor-

---

**6.** The *Brandstaetter* case involved the issue of a trustee's right to object to the debtors' claim of exemptions for personal injury causes of action after the debtors' discharge. Due to a time gap between the bankruptcy rules in effect under the former Bankruptcy Act and the new Bank-

ruptcy Code, no statutory time limit for filing objections applied to the case.

**7.** The order apparently was a form of order submitted by First Interstate Bank, the movant for relief from stay.

ney's fees, expenses, and damages are denied. It is

SO ORDERED.

### APPENDIX A

United States District Court

Northern District of Indiana

Fort Wayne Division·

In the Matter of Robert Roy Gilbert

a/k/a Robert R. Gilbert

d/b/a Gilbert Construction Company Bankrupt

Robert Roy Gilbert

a/k/a Robert R. Gilbert Plaintiff

vs.

Indiana Bank and Trust Co. of Fort Wayne Defendant

Bankruptcy No. FB 76–513

77–21

### ORDER

At South Bend, Indiana, on September 30, 1977.

This matter is before the Court upon the Motion of Robert Roy Gilbert for Summary Judgment upon his complaint, which Motion was filed July 18, 1977. Earlier, on June 29, 1977, the defendant had filed its Motion for Summary Judgment and in the alternative to Dismiss the Complaint of Plaintiff.

The complaint of present concern was filed by the plaintiff-bankrupt on May 23, 1977. That complaint sought a determination of dischargeability of bankrupt's debt to defendant, more specifically a determination that his joint and several obligation on his indebtedness to defendant is discharged and also for injunctive relief against the defendant, enjoining the defendant from the taking or pursuing of any action or process to collect its debt.

The relevant facts may be briefly stated. On December 31, 1975, the plaintiff and his wife obtained a business loan from the defendant, for which they jointly signed a secured promissory note in the amount of $93,400; the note was secured by a mortgage against a single lot. The note was payable in monthly installments and plaintiff and his wife defaulted on the monthly installments due June 30, 1976. On September 17, 1976 the defendant filed its "Complaint on Promissory Note and For Foreclosure of Mortgage"[1] against plaintiff and his wife. On September 22, 1976, plaintiff filed his petition for voluntary bankruptcy, and included among his scheduled debts the balance due on the above-mentioned promissory note. On December 3, 1976, the bankrupt received his discharge in bankruptcy, including the discharge of the debt comprising the subject matter of the defendant's previously filed complaint in the Allen Superior Court. On March 11, 1977, the Allen Superior Court entered a judgment on this same complaint in favor of the defendant[2] and against plaintiff in rem and against his wife in rem and in personam. In its judgment, the Allen Superior Court found the plaintiff (defendant here) entitled to summary judgment as a matter of law against the bankrupt and his wife. The Allen Superior Court further found that the plaintiff (defendant here) was entitled to a joint judgment against the bankrupt and his wife in rem against any and all real estate and interests in real estate owned or held by them as tenants by the entirety as of the date of the bankrupt's discharge in bankruptcy with the amount of such judgment limited to the deficiency remaining after

---

1. In Allen Superior Court, Allen County, Indiana, Cause No. S–76–2844. See Exhibit A attached to plaintiff's complaint of May 23, 1977.

2. In Allen Superior Court, Allen County, Indiana, No. S–76–2844. See Exhibit (the judgment) attached to plaintiff's complaint of May 23, 1977.

the Sheriff's Sale of the mortgaged real estate.

Both sides in the present matter do not contest that the single piece of real estate used as security for the promissory note should be sold or turned over to the defendant here. It is also their mutual expectation that the value of that real estate will not be sufficient to pay all of the remaining indebtedness on the promissory note of the bankrupt and his wife to the defendant. However, the bankrupt contends that, subsequent to his discharge in bankruptcy, that other tenants by the entireties real property owned by himself and his wife cannot be sold pursuant to the Allen Superior Court Judgment[3] on March 11, 1977 if, as expected, the sale of the mortgaged real estate does not generate sufficient monies to pay the amount of the Allen Superior Court Judgment.

The Court in the present matter, after considering the parties' pleadings, motions, briefs and arguments (on the parties' respective Motions for Summary Judgment) concludes that there has been no genuine issue of fact submitted by either party to the Court and further concludes that, upon the bankrupt's complaint filed on May 23, 1977, the bankrupt is entitled to judgment as a matter of law.

The Court is convinced that both the principles and policy analysis which it previously addressed in an amended order of September 29, 1975 specific to *In Re Zilm*,[4] are directly applicable to the present matter. While a copy of that order is attached for complete perusal, the Court does wish to emphasize here the policy position underlying both *Zilm* and the present matter—that the bankrupt has a right to a fresh start and, therefore, it is inappropriate that a joint creditor can, subsequent to bankrupt's discharge, maintain a "low profile" while the bankrupt and his wife build an equity in real estate that is tenancy by the entireties property. This policy analysis requires that a joint creditor must either perfect a pre-discharge lien or suffer being discharged along with all other unsecured creditors. This does not mean that the Court will leave the joint creditor bereft of a functionally adequate remedy, since it will, as in *Zilm* and with consideration of procedural safeguards to the bankrupt and his/her spouse regarding their entireties property, allow a sufficient stay for that creditor to attempt to secure a joint judgment and properly perfect it prior to the Court's discharge of the bankrupt. In the present matter, the defendant chose not to request such a stay prior to the plaintiff's discharge.

Accordingly, the Court determines that, subsequent to the above-mentioned mortgage foreclosure sale[5] and the application of the proceeds of same to plaintiff's joint indebtedness to defendant, any residual balance of unpaid indebtedness still due on plaintiff's several and joint obligation to defendant reflects an indebtedness that is and has already been discharged in bankruptcy.

The Court further enjoins the defendant from any further proceeding(s) against any of the plaintiff's tenancy by the entireties property, specifically that property against which the defendant had not secured a pre-discharge lien.

SO ORDERED.

/s/ Robert K. Rodibaugh
U.S. BANKRUPTCY JUDGE

cc: Dean A. Brown, Esq.

Donald Aikman, Esq.

---

3. Id, at pp. 5 and 9.

4. *In Re Larry Lee Zilm*, Bankruptcy No. SB 75–61 (N.D.Ind. September 29, 1975) Copy attached.

5. Reference here is made solely to that real estate described in the Allen Superior Court's judgment of March 11, 1977, Cause No. S–76–2844, at page 6, to wit:

Lot numbered One (1) in St. Vincent Place Addition to the City of Fort Wayne, according to the plat thereof, recorded in Plat Record 12, page 30 in Office of the Recorder of Allen County, Indiana.

In the United States District Court

for the

Northern District of Indiana

Fort Wayne Division

In the Matter of

Robert Roy Gilbert, a/k/a

Robert R. Gilbert, d/b/a

Gilbert Construction Co., Bankrupt.

Indiana Bank and Trust

Company of Fort Wayne, Appellant,

v.

Robert Roy Gilbert, a/k/a

Robert R. Gilbert, Appellee.

Gilbert Appeal 77–21A

No. FB 76–513

Filed June 9, 1978

## MEMORANDUM OF DECISION AND ORDER

This appeal is taken from an order entered by the bankruptcy court on September 30, 1977. In the proceeding lead to that order, appellant contended that appellee's discharge in bankruptcy did not foreclose it from obtaining and satisfying a post-discharge state court judgment, where that judgment is based upon an in rem liability of the bankrupt and spouse, as husband and wife, recognized by state law, and where satisfaction of the in rem liability is to be obtained only by executing against property held by the bankrupt and his spouse as tenants by the entirety as of the date of the discharge. The bankruptcy court determined that the bankrupt's liability on the indebtedness underlying the judgment in rem or otherwise, had been discharged in bankruptcy and, therefore, enjoined appellant "from any further proceeding(s) against any of the [appellee's] tenancy by the entireties property, specifically that property against which the [appellant] had not secured a pre-discharge lien."

Upon entry of the bankruptcy court's order appellant perfected this appeal, presenting the following stated issues for consideration:

(1) Whether appellee's discharge in bankruptcy operate to discharge the in rem liability of appellee and his spouse, as found by the state court, as to the real estate owned by them as tenants by the entirety at the time of the discharge;

(2) Whether the liability of appellee and his spouse to appellant is secured by a pre-discharge lien under Indiana law;

(3) Whether proceedings by appellant against appellee and his spouse in state court were barred by the automatic stay provisions of Bankruptcy Rules 601 or 401; and

(4) Whether appellant is entitled to proceed to enforce the in rem judgment obtained in state court against appellee and his spouse as against the entirety property owned by them at the time of the discharge.

Although appellant's stated issues are somewhat overlapping, the central issue is clear: Does the discharge in bankruptcy of a person serve to bar a creditor from obtaining and satisfying a post-discharge in rem judgment against the bankrupt and his spouse, as husband and wife, as to a joint obligation of the bankrupt and spouse where satisfaction of the judgment is sought only from property held by them as tenants by the entirety at the time of the discharge and where no interest in that property passed to the trustee in bankruptcy or otherwise became subject to the jurisdiction of the bankruptcy court. By its September 30, 1977, order, the bankruptcy court determined that the discharge does serve as such a bar. This court agrees and will affirm the order of the bankruptcy court.

The facts underlying this action are neither complex nor disputed:

On December 31, 1975, the appellee and his spouse obtained a loan from the appellant for which they jointly signed a secured promissory note in the amount of $93,-400.00. This note was secured by a mort-

gage on a single tract of real estate owned by the debtors as tenants by the entirety. The note was payable in monthly installments; the debtors defaulted on the installment due June 30, 1976.

On September 17, 1976, the appellant filed a complaint against the debtors in the Allen County Superior Court, Fort Wayne, Indiana. The complaint was styled: "Complaint on Promissory Note and for Foreclosure of Mortgage."

On September 22, 1976, appellee filed his petition for voluntary bankruptcy, and he included among his scheduled debts the balance due appellant on the promissory note.

On October 5, 1976, the debtors filed their answers to the state court action. Appellee admitted the essential allegations amounting to default but pled his pending bankruptcy petition in defense. The debtor spouse merely admitted those allegations amounting to default.

On October 20, 1976, the first meeting of creditors was held; a trustee was appointed for the bankruptcy estate; and November 19, 1976, was set as the last day for filing objections to the discharge.

On December 3, 1976, no objections to the discharge having been filed, appellee was issued a discharge in bankruptcy.

On February 9, 1977, appellant filed a motion for summary judgment in the state court proceeding.

On March 4, 1977, the appellee filed an affidavit in opposition to the motion for summary judgment. By his affidavit appellee set forth his discharge in bankruptcy as a bar to appellant's recovery.

On March 7, 1977, oral argument was heard from both parties on the state court motion for summary judgment.

On March 11, 1977, summary judgment was entered in the state court action. By the terms of this judgment, the debtor spouse was found to be personally liable on the debt. Appellee was found not to be personally liable on the debt, his discharge in bankruptcy having created a bar to any personal liability against him. Appellee and his spouse, as husband and wife, were found liable on the debt in rem, but not in personam, with satisfaction of the in rem liability limited to their interests in real estate held by them as tenants by the entirety as of the date of appellee's discharge, *i.e.*, December 3, 1976.[1]

On May 23, 1977, appellee filed a complaint in the bankruptcy court to determine the dischargeability of the in rem entirety liability rendered by the state court judgment. In response to the parties' cross-motions for summary judgment on this complaint, the bankruptcy court entered its September 30, 1977, order which forms the basis for this appeal.

The basis for appellant's claim in this action is found in a long line of Indiana decisions. *See, e.g., First National Bank of Goodland v. Pothuisje*, 217 Ind. 1, 25 N.E.2d 436 (1940); *Smith v. Beneficial Finance Co. of Indianapolis, Inc.*, 139 Ind. App. 653, 218 N.E.2d 921 (1966); *Shabaz v. Lazar*, 115 Ind.App. 691, 60 N.E.2d 748 (1945). The import of these decisions is as follows:

Under the law of the State of Indiana, three distinct forms of liability attach when a husband and wife incur a debt jointly and severally: the husband becomes liable personally both jointly and severally; the wife becomes liable personally both jointly and severally; and the marital entity, *i.e.*, the husband and wife as such, becomes liable in rem to the extent of any real property held by the husband and wife as a marital entity, *i.e.*, as tenants by the entirety. This third entity and its concomitant liability, *i.e.*, the liability of the marital entity, pos-

---

1. The state court also foreclosed the mortgage on the one tract of real estate which the debtors had pledged as security for the promissory note. There is no issue on this appeal as to the propriety of that foreclosure. The property was apparently sold for approximately $27,000, leaving a deficiency on the state court judgment of approximately $76,000. The state court judgment has been entered in the amount of approximately $103,000, *i.e.*, the principal on the note, the interest then accrued, and incidental costs connected with the recovery. It is only the in rem liability on the deficiency which is at issue on this appeal.

sesses all of the attributes of the tenancy by the entirety estate in real property as recognized by Indiana law. These decisions further hold that a discharge in bankruptcy does not bar an in rem recovery on the "third" liability, *i.e.*, from the marital entity, unless the tenancy by the entirety property was brought into the bankruptcy estate. The decisions do limit the in rem recovery to the interests in real property held by the marital entity as a tenancy by the entirety at the time of the bankruptcy discharge. The parties do not dispute the state of the Indiana law as it is expressed in these decisions. The overall issue is whether that law conflicts with, and therefore is superseded by, federal bankruptcy law.

Of the stated issues presented by appellant, issues one (1) and four (4) are essentially identical and concern only the overall validity of the state law vis-a-vis federal bankruptcy law. These issues will be treated, *infra.*

Issue two (2), *i.e.*, whether appellee's liability was secured by a pre-discharge lien recognized under state law, is completely without legal support and, therefore, will be rejected. Appellant argues that a lien is automatically created under state law in favor of a joint creditor as to all tenancy by the entirety property held by a husband and wife at the time they incur a joint obligation. Appellant has not, however, cited any authority in either the Indiana case law or the Indiana statutes which explicitly recognize this automatic lien. Instead, appellant would have this court imply such a lien from the Indiana decisions which hold the marital entity liable for a

post-discharge judgment based upon a joint obligation of the husband and wife. To so hold would create yet another legal fiction in the state law governing tenancy by the entirety estates. The state courts have not done so, and neither will this court.[2]

Issue three (3) poses the question whether appellant's state court proceeding was barred by the automatic stay provisions of Rules 401 and 601, Rules Bankr.Proc., 11 U.S.C.A. As to Rule 601 there was no automatic stay, and apppellee concedes as much in his reply brief on this appeal. Rule 601 provides a stay against lien enforcement as to "(1) a lien against property in the custody of the bankruptcy court, or (2) a lien against the property of the bankrupt obtained within 4 months before bankruptcy...." Neither of these provisions is applicable to the facts of this case.

The application of Rule 401 is not as clear. Under Rule 401 actions are stayed if "founded on an unsecured provable debt other than one not dischargeable under clause (1), (5), (6), or (7) of section 35(a)." Rule 401, Rules Bankr.Proc., 11 U.S.C.A. Of course, the central issue in this action is whether the debt of the marital entity is a debt falling within the language of section 35(a), which provides: "A discharge in bankruptcy shall release a bankrupt from all of *his provable debts*, whether allowable in full or part except such as [are excepted by this section]." 11 U.S.C. § 35(a) (emphasis added). Eight exceptions are listed in this section; it is without dispute that this debt does not fall within any of the eight exceptions. Therefore, to be excepted from the discharge the debt must be found not to be one "of *his provable*

2. Tenancy by the entirety estates have long presented a problem in the orderly administration of bankruptcy estates. Because the property is deemed to be owned entirely by each the husband and the wife, subject only to a survivorship interest in the other, such property is not included in the estate of the bankrupt spouse. *See, e.g., Phillips v. Krakower,* 46 F.2d 764 (4th Cir.1931); *First National Bank of Goodland v. Pothuisje,* 217 Ind. 1 25 N.E.2d 436 (1940). In enacting the Bankruptcy Act of 1938, Congress recognized the problems presented by tenancy by the entirety property and chose only a limited approach in remedying them. This limited remedy is found at 11 U.S.C. § 110(a):

> All property ... in which the bankrupt has at the date of bankruptcy an estate ... by the entirety and which within six months after bankruptcy becomes transferable ... solely by the bankrupt, shall, to the extent it becomes so transferable, vest in the trustee....

A much more general remedy has been proposed in a pending bankruptcy bill designed to establish more uniformity in the bankruptcy law. Pursuant to this bill, the trustee would be empowered to sell tenancy by the entirety property, under specified conditions, and to divide the proceeds between the non-bankrupt spouse and the bankruptcy estate, accordingly. *See* H.R. 8200, 95th Cong., 1st Sess. § 363(h) (1977).

*debts.*" Under the provisions of section 35(c), 11 U.S.C. § 35(c), the bankruptcy court and state courts have concurrent jurisdiction to determine this issue. Therefore, the state court in this action did have jurisdiction to determine if the debt at issue was one "of his provable debts," and the state court proceeding would appear not to have been subject to the automatic stay provisions of Rule 401. *See* note 4 *infra.*

The overall issue presented in this appeal, as it is stated in appellant's issues one (1) and four (4), has been previously considered and determined by the United States Court of Appeals for the Sixth Circuit in a situation legally indistinguishable from that now before this court. *Harris v. Manufacturer's National Bank of Detroit,* 457 F.2d 631 (6th Cir.1972). This court adopts the reasoning and result of the *Harris* decision.

In *Harris* the bankrupt/appellant and his wife had obtained a loan from the creditor/appellee for which they jointly signed an unsecured promissory note. They then defaulted, and subsequent to the default Harris filed a voluntary petition in bankruptcy. Subsequent to the filing of the petition in bankruptcy, but prior to the issuance of a discharge, the creditor filed suit in a Michigan state court seeking judgment on the promissory note. Judgment was ultimately entered in the state court for the creditor, but only after the bankrupt had received his discharge in bankruptcy. Prior to entry of the state court judgment, and subsequent to the issuance of the discharge, the bankrupt initiated an action in the federal district court seeking to enjoin the creditor from continuing its state court suit or attempting to levy upon any judgment which might be obtained in that suit. The federal district court denied the bankrupt's claim, holding that Michigan law controlled and that Michigan law would permit post-discharge execution as to tenancy by the entirety property.[3] On appeal, the district court's decision was reversed.

The United States Court of Appeals for the Sixth Circuit first noted that the district court had properly exercised jurisdiction over the action as " 'a supplemental and ancillary bill in equity, in aid of and to effectuate the adjudication and order made by the same [bankruptcy] court.' *Local Loan Co. v. Hunt,* 292 U.S. 234, 239, 54 S.Ct. 695, 697, 78 L.Ed. 1230 (1934)." *Harris v. Manufacturer's National Bank of Detroit supra,* at 632. The same equitable jurisdiction also lies in this action. Also as in *Harris,* the equitable nature of this action overrides any res judicata effect which might otherwise normally attach to the state court judgment. This result is essential if the "uniform" application of the federal bankruptcy laws is to be preserved. The court also finds this result to be supported by both the Bankruptcy Act[4] and

---

3. Appellant in the instant action seeks to distinguish the underlying Michigan law from that of the State of Indiana. The court finds no legally cognizable basis for making such a distinction. The end result of both laws is to permit post-discharge execution as to tenancy by the entirety property. Regardless of the legal reasoning used by the states to reach that end, if the effect of the Michigan law conflicts with the federal bankruptcy law, so too must the identical effect of the Indiana law. In making this determination, the court is fully aware of appellant's argument that Indiana law limits the "third" liability recovery to the interest in tenancy by the entirety property held by the bankrupt and spouse at the time of the discharge. The court finds this limitation insufficient, in the overall analysis of the *Harris* decision, to distinguish the Indiana law.

4. Pursuant to section 14 of the Bankruptcy Act, 11 U.S.C. § 32 the bankruptcy court's order of discharge contained the following provision:

Any judgment heretofore or hereafter obtained in any court other than this court is null and void as a determination of the personal liability of the bankrupt with respect to any [discharged debt].

In addition to this provision, which was added by virtue of the 1970 amendments to the Bankruptcy Act, several other sections of the Act were amended in 1970 to correct longstanding abuses of the bankruptcy laws and to provide a more effective mechanism for the uniform determination and application of those laws. *See, e.g.,* 11 U.S.C. §§ 11(a)(12), 32, 35, and 66 (all as amended). *See also* 1A *Collier on Bankruptcy* § 14.69, at 1452–55 (14th ed. 1978). Viewed in their overall context, these laws establish the power of the bankruptcy court to inquire into the validity of a state court judgment to determine if that

the United States Supreme Court's decision in *Local Loan Co. v. Hunt, supra.*

Having determined the federal district court properly exercised its jurisdiction, the *Harris* court then turned to a determination of the merits of the appellant's claim. After fully considering the policy behind the bankruptcy laws, the court found:

> The net effect under the Michigan rule is that only the husband's several liability, and not his joint liability, under the joint obligation constitutes a "provable debt" from which he is released under Section 17 (footnote omitted).... Nothing in Section 17 ... permits the exclusion of the husband's joint liability from provable debts ... simply because the property attachable under the joint obligation is held by the codebtor spouses as tenants by the entirety. Rather, the Michigan case law at issue here directly conflicts with Section 17 and with the over-riding purpose of the Bankruptcy Act—that the bankrupt shall have "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt." (citations omitted).

*Harris, supra,* at 635.

The *Harris* court also considered and rejected the argument that its decision violated the provisions of section 16 of the Bankruptcy Act, 11 U.S.C. § 34, which provides that the liability of a codebtor shall not be altered by the discharge of the bankrupt. In rejecting this argument, the court noted that "[a]pplication of Section 16 to cases where the spouses hold property as tenants by the entirety ... would in effect result in a preservation of the entire joint liability of both the husband and wife since the discharged husband's interest in the property ... cannot be isolated and removed from a joint judgment against both spouses." *Harris, supra,* at 635 n. 1. Thus, when faced with an apparent conflict between two sections of the Bankruptcy Act, *i.e.,* sections 16 and 17, the court chose that result which best comports with the overall objectives of the Bankruptcy Act.[5]

The *Harris* decision presents a well reasoned and soundly supported result for a very thorny problem. This court adopts that reasoning and, therefore, affirms the bankruptcy court's order of September 30, 1977.

### ORDER

Accordingly, appellant Indiana Bank and Trust Company of Fort Wayne's appeal is denied, and the order of the bankruptcy court, entered September 30, 1977, is hereby affirmed in all respects.

Entered this 9th day of June, 1978.

/s/ Jesse E. Eshbach
United States District Judge

---

judgment violates the conditions expressly stated in the bankruptcy court's order of discharge. See discussion of Rule 401, Rules Bankr.Proc., 11 U.S.C.A., *supra.* If the state court judgment is found to be null and void, the bankruptcy court may then enjoin the creditor from taking any further action based upon the null and void judgment to collect from the bankrupt. That is exactly the approach taken in this action.

5. The court notes that the result in *Harris* is not to leave creditors totally without recourse against the tenancy by the entirety property. It is a well established practice for such creditors to petition the bankruptcy court for, and to receive, a stay of discharge pending their obtaining a valid state court judgment which creates a pre-discharge lien on the tenancy by the entirety property. Since this property does not pass to the bankruptcy estate, the lien cannot be invalidated by the bankruptcy trustee, and thus, it preserves the creditor's claim as against the tenancy by the entirety property. *See, e.g., Davison v. Virginia National Bank,* 493 F.2d 1220 (4th Cir.1974); *Phillips v. Krakower,* 46 F.2d 764 (4th Cir.1931); *In re Magee,* 415 F.Supp. 521 (W.D. Mo.1976).